# Browarsky Estate

*Charles F. Dean* and *John J. Dean,* for exceptant.

*John G. Frazer, Jr., Harry Woodruff Turner* and *Thomas N. Griggs,* for legatee.

*David M. Janavitz, John G. Frazer, Jr., Alvin P. Brannick* and *Thomas N. Griggs,* for executors.

RAHAUSER, J., April 6, 1967.—A petition for distribution was filed in the above estate on November 28, 1966, and numerous exceptions were filed to it and to the first and final account and the supplemental accounting.

The matter presently before the court arises from a petition for distribution and to lift suspension on a fund of $228,498.07, which was suspended by a decree of this court dated August 7, 1964.

The fund of $228,498.07 was ordered suspended pending a tax settlement that was pending for a considerable period of time.

The tax litigation was involved in varying degrees with litigation that engulfed the estate almost from the date of the death of testator.

The exceptions now under consideration concern interest on funds paid to the Commonwealth of Pennsylvania in payment of Pennsylvania transfer inheritance tax, funds paid to the Internal Revenue Service for Federal estate taxes, and funds used and paid to Dora Foster and Lewis Shepperd, the executors of this decedent's estate, and Sadie Shapira, also known as Sadie Shepperd, a sister of decedent.

The decree of suspension of the aforesaid $228,498.-07 was entered by this court, subsequent to orders dated July 15, 1964, directing the filing of a supplemental petition for distribution and a settlement agreement and stipulation of same date. These instruments, more specifically, read as follows:

"DECREE

"Before BOYLE, P.J., COX, RAHAUSER AND WOLK, JJ.

"Per Curiam

"AND NOW, to wit, this 15th day of July, 1964, it appearing to the Court that a Supplemental Petition for Distribution with a Stipulation has been filed, and it further appearing to the Court that the Stipulation disposes of all the exceptions to the decree of the auditing judge in addition to other matters undisposed of by the auditing judge, it is hereby ordered and decreed that the entire record be returned to the auditing judge for a decree in accordance with the Supplemental Petition for Distribution and Stipulation filed.

(Sgd) Per Curiam

W"

"STIPULATION—AGREEMENT

"WHEREAS, a Decree of Distribution was entered by the Court in the above entitled Estate on May 16, 1963;

"WHEREAS, exceptions were filed to said Decree of Distribution dated May 16, 1963;

"WHEREAS, it is the desire of all of the parties in interest to agree to an amicable disposition of the exceptions and the settlement of all matters with the exception of having the Federal Estate Tax and the Commonwealth of Pennsylvania Inheritance Tax prorated, and what amount of interest, if any, that may be due for any moneys used for the payment of these Taxes.

"NOW, THEREFORE, in consideration of the foregoing, we, the parties in interest, personally or by our attorneys who are duly authorized to execute this Stipulation-Agreement in our behalf, request your Honorable Court to enter a Decree dismissing or sustaining exceptions as hereinafter set forth, prorate the costs incurred in opposing the election of Helen Collier Browarsky, alleged common law wife of Ike Browarsky, deceased, to take against his Last Will and Testament, and make distribution in conjunction with the First and Final Account, Petition for Distribution, and Supplemental Petition for Distribution filed and all other matters agreed to in this Stipulation-Agreement.

"1. Exception to disallowance of check payable to Sadie Shapira in the sum of $300.00 is dismissed.

"2. Exception to disallowance of check payable to Lewis A. Shepperd in the sum of $1,000.00 is dismissed.

"3. Exception to the allowance of a sur-charge against Lewis A. Shepperd and Dora Foster, Executors, in the sum of $132.00 is sustained.

"4. Exception to the allowance of the claim of Dora Foster on a check in the sum of $7,500.00 is sustained, and Dora Foster is allowed the sum of $5,625.00 for payment in full of her claim on said check in the sum of $7,500.00.

"5. Exception to disallowance of any and all bond premiums paid for the bond posted for Lewis A. Shepperd, non-resident Executor, is dismissed.

"6. Lewis A. Shepperd and Dora Foster, Executors of the Estate of Ike Browarsky, deceased, are to be paid the sum of $7,000.00, that is $3,500.00 each, as Executor Fees for payment in full for all services rendered to the principal residuary of said Estate.

"7. Sur-charge claim of the personal residuary legatees, namely Mellon National Bank and Trust Company, Trustee for Rachel Sandra Browarsky and Be-

nita Mae Browarsky and Henrietta Browarsky Ruckberg against Lewis A. Shepperd and Dora Foster, Executors of the Estate of Ike Browarsky, deceased, arising out of the management of the lease for the Bellevue Theatre, Lincoln Avenue, Bellevue Borough, Allegheny County, Pennsylvania, is dismissed.

"8. Any recovery that may be made either through a compromise settlement or trial resulting in a verdict in the suit filed in the Court of Common Pleas of Allegheny County, Pennsylvania, Associated Theatres, Inc., Plaintiff, vs. Ernest Stern, Defendant, at No. 1938 April Term, 1964, is to be paid to the personal residuary legatees of the Estate of Ike Browarsky, deceased.

"9. The costs in the sum of $21,084.25 incurred in opposing and defeating the election of Helen Collier Browarsky to take against the Last Will and Testament of Ike Browarsky, deceased, are to be charged as follows:

|  | Amount to be Charged |
|---|---|
| "Real Estate | $4,438.24 |

*"Personal Estate to be charged as follows:*

| | |
|---|---|
| "Joseph Browar and Lewis A. Shepperd : on the proceeds of stock of Screen Guild : Production Company—$750.00 : "Stock of Chateau Amusement Co.— : $500.00; : and : "Associated Theatres, Inc.— : $625.00 : | 264.90 |
| "Dora Foster on her legacy of $10,000.00 .. | 1,412.47 |
| "Rachel Sandra Browarsky | 5,987.46 |
| "Benita Mae Browarsky | 5,987.46 |
| "Henrietta Browarsky Ruckberg | 2,993.72 |

"10. Fee of David M. Janavitz, Esquire, for services rendered to the Executors of the

*Estate Real Estate* is fixed at ............ 4,000.00

"11. Fee of Charles F. Dean, Esquire, for services rendered to the Executors of the Estate of Ike Browarsky, deceased, in suit at No. 624 January Term, 1956, Court of Common Pleas of Allegheny County, Pennsylvania, is fixed at ...................... 1,500.00 and to be charged against the *personal residuary of the Estate.*

"12. Settlement claim of James Steele and Margaret Steel, his wife, as Plaintiffs, in the Court of Common Pleas of Allegheny County, Pennsylvania, at No. 624 January Term, 1956, in the sum of $7,500.00, is approved, and the said sum of $7,500.00 which has been paid by the Executors of the Estate of Ike Browarsky, deceased, is to be charged against the *personal residuary of the Estate.*

"13. Fee of Lewis A. Shepperd, Co-Executor for services rendered to the Estate of Ike Browarsky, deceased, real estate principal, is fixed at ........................ 1,000.00

"14. Fee of Dora Foster, Co-Executor for services rendered to the Estate of Ike Browarsky, deceased, real estate principal, is fixed at ................................ 1,000.00

(Sgd) Alexander Cooper
Attorney for Lewis A.
Shepherd, Individually

(Sgd) Charles F. Dean
Attorney for Mellon
National Bank and Trust
Company, Trustees for
Rachel Sandra Browarsky
and Benita Mae
Browarsky

(Sgd) John G. Frazer, Jr.
Attorney for Dora Foster,
Individually

(Sgd) Charles F. Dean
Attorney for Henrietta
Browarsky Ruckberg

(Sgd) David M. Janavitz     (Sgd) David M. Janavitz
Attorney for Dora Foster    Attorney for the Estate of
and Lewis A. Shepperd,      Joseph Browar, Deceased".
Co-Executors of the Estate
of Ike Browarsky, Deceased

In order to understand the complexity of the matter before the court, it is necessary to trace the history of the estate and all its proceedings prior to the above order.

Decedent died April 19, 1954, and letters were granted on his estate April 22, 1954.

An inventory was filed on or about July 22, 1955, which indicated that the personalty in the estate was valued at $168,558.93 and the realty at $200,000.

The will of decedent, dated June 26, 1947, was filed in the Register of Wills Office of Allegheny County, in Will Book, Vol. 318, page 408. The will of decedent is more fully set forth as follows:

"LAST WILL AND TESTAMENT

"I, IKE BROWARSKY, of the City of Pittsburgh, County of Allegheny and State of Pennsylvania, being of sound and disposing mind, do hereby make, publish and declare the following to be my Last Will and Testament, and I hereby revoke all previous testamentary dispositions and Wills heretofore made by me.

"First. I do hereby direct my Executor, hereinafter named, to pay all of my just debts and funeral expenses as soon after my decease as may be convenient.

"Second. I give and bequeath to DORA FOSTER, the sum of Ten Thousand ($10,000.00) Dollars.

"Third. I give and bequeath to the JEWISH HOME FOR THE AGED, the sum of Two Thousand ($2,000.00) Dollars.

"Fourth. I give and bequeath to the JEWISH HOME FOR BABIES, the sum of One Thousand ($1,000.00) Dollars.

"Fifth. I give and bequeath to the YOUNG MEN'S & WOMEN'S HEBREW ASSOCIATION, the sum of One Thousand ($1,000.00) Dollars.

Sixth. I give and bequeath to the FEDERATION OF JEWISH PHILANTHROPIES, the sum of One Thousand ($1,000.00) Dollars.

Seventh. I give and bequeath to JOSEPH BROWARSKY and LOUIS SHAPIRA, share and share alike, all my stock in the Chateau Amusement Company and Associated Theatres, Inc., and all other stock in any motion picture enterprise in which I may be interested, and in the event that at the time of my decease I own or have an interest in any motion picture theater or theaters, as an individual, I give, devise and bequeath the same to JOSEPH BROWARSKY and LOUIS SHAPIRA, share and share alike.

"Eighth. I devise to my hereinafter named Trustees, all of my real estate, wheresoever the same may be situate, to hold in Trust for the following uses and purposes:—

"(a) To manage said Trust Estate; to rent the real estate and pay all taxes, interest, insurance, repairs, commissions and all expenses connected therewith; to collect all rents, profits and income from my real estate.

"I authorize and empower my Trustees, or their successors, in their discretion, at any time to sell any or all of my real estate for such price or prices and upon such terms and conditions as they may deem proper, and to make, execute and deliver to the purchaser or purchasers thereof good and sufficient deeds of conveyance therefor, freed and discharged of all legacies and trusts and without liability on the part of the purchaser or purchasers thereof to see to the application of the purchase money.

"In the event that my Trustees shall see fit to sell part or all of my real estate, which is the corpus of this Trust, I authorize them to manage the said Trust Es-

tate and for that purpose to invest and reinvest all sums of money derived from the sale of the real estate; to collect all profits, interest, dividends and income from said Trust Estate; and they are authorized and empowered, in their discretion, to purchase any investments which they may see fit, and they shall not be required ti (sic) invest principal sums into legal investments for Trustees and they shall invest in such securities as they may deem safe and proper, not confining them to legal investments.

"(b)  The income from my Trust Estate shall be distributed as follows:—

"1.  My Trustees shall expend so much of the income as may be necessary for the support and maintenance of my sister, SADIE BROWARSKY SHAPIRA, and my Trustees shall have sole discretion in the expenditure of the income necessary for her maintenance and support, taking into consideration her requirements and needs, and their judgment shall not be questioned and shall be binding and conclusive on all parties.

"2.  All income of this Trust, remaining after the aforesaid expenditure for the maintenance and support of my sister, SADIE BROWARSKY SHAPIRA, shall be retained by the Trustees and shall be invested and reinvested as heretofore set forth under this Article, and shall be retained by my Trustees until the termination of this Trust.

"(c)  Upon the death of my sister, SADIE BROWARSKY SHAPIRA, this Trust shall terminate, and the principal and any accumulated income thereof shall be distributed in equal shares to my Nephews, JOSEPH BROWARSKY and LOUIS SHAPIRA.

"Ninth.  All the rest, residue and remainder of my estate, real, personal or mixed, of whatsoever kind and wheresoever situate, shall be divided into five (5) equal portions, and I give, devise and bequeath said portions as follows:—

"(a) One (1) portion to my niece, HENRIETTA BROWARSKY RUEKBERG.

"(b) Two (2) portions to THE MELLON NATIONAL BANK & TRUST COMPANY, in trust, however, for my Niece, RACHEL SANDRA BROWARSKY, for the following uses and purposes:—

"1. To manage the Trust Estate and for that purpose to invest and reinvest the same in such income producing securities as my said Trustee may deem safe and proper, not confining my said Trustee to legal investments for Trustees. To collect all profits, interest, dividends and income from my said Trust Estate and to pay all expenses in connection therewith.

"2. During the minority of my Niece, RACHEL SANDRA BROWARSKY, the Trustee shall distribute the income in quarterly installments, to be used toward her maintenance, education and support until she reaches the age of 21 years, and at that time the Trustee shall make quarterly payments of income to RACHEL SANDRA BROWARSKY directly until the termination of this Trust as hereinafter stated.

"3. Upon her attaining the age of 25 years, this Trust shall cease and terminate, and my Trustee shall pay to my Niece, RACHEL SANDRA BROWARSKY, the principal sum, plus any accumulation of income.

"4. In the event that during the life of this Trust, and prior to its termination, my Niece, RACHEL SANDRA BROWARSKY shall die without leaving issue, the income and principal of this Trust, as heretofore stated, shall go to my Niece, BENITA MAE BROWARSKY, under the same provisions.

"5. In the event that my Niece, RACHEL SANDRA BROWARSKY shall die leaving issue, the Trustee shall distribute the quarterly installments of income among such issue equally, per stirpes, during their minority, and as each of such issue attains the age of 21

years, the principal and undistributed income shall be paid over to such issue.

"(c) Two (2) portions to THE MELLON NATIONAL BANK & TRUST COMPANY, in trust, however, for my Niece, BENITA MAE BROWARSKY, for the following uses and purposes:—

"1. To manage the Trust Estate and for that purpose to invest and reinvest the same in such income producing securities as my said Trustee may deem safe and proper, not confining my said Trustee to legal investments for Trustees. To collect all profits, interest, dividends and income from my said Trust Estate and to pay all expenses in connection therewith.

"2. During the minority of my Niece, BENITA MAE BROWARSKY the Trustee shall distribute the income in quarterly installments, to be used toward her maintenance, education and support until she reaches the age of 21 years, and at that time the Trustee shall make quarterly payments of income to BENITA MAE BROWARSKY directly until the termination of this Trust as hereinafter stated.

"3. Upon her attaining the age of 25 years, this Trust shall cease and terminate, and my Trustee shall pay to my Niece, BENITA MAE BROWARSKY, the principal sum, plus any accumulation of income.

"4. In the event that during the life of this Trust, and prior to its termination, my Niece, BENITA MAE BROWARSKY, shall die without leaving issue, the income and principal of this Trust, as heretofore stated, shall go to my Niece, RACHEL SANDRA BROWARSKY, under the same provisions.

"5. In the event that my Niece, BENITA MAE BROWARSKY shall die leaving issue, the Trustee shall distribute the quarterly installments of income among such issue equally, per stirpes, during their minority, and as each of such issue attains the age of

21 years, the principal and undistributed income shall be paid over to such issue.

"Tenth. I hereby direct that no payments of income directed to be made by my Trustees, or their successors, under the provisions of the foregoing Trusts, shall be pledged, assigned, transferred or sold, or in any manner whatsoever anticipated, charged or encumbered by the beneficiaries thereunder, or any of them, or be in any manner liable in the hands of my Trustees, or their successors, for the debts, contracts or engagements of the beneficiaries thereunder.

"Eleventh. I do not wish to have the value of my Estate reduced by forced sales of real and personal property in order to raise money to pay taxes. I therefore authorize my Executors and Trustees, in order to provide funds for payments of Estate taxes, Inheritance taxes, or assessments of any nature whatsoever, now or hereafter imposed by the United States of America, or any State, County or municipality therein, to borrow money for that purpose; to pledge or mortgage any of the property, real or personal, which I may own at the time of my death, and to execute and deliver any and all notes, bonds, obligations, mortgages, assignments and other instruments, and to perform all acts necessary, proper or convenient in connection therewith; any and all such loans, pledges and mortgages to be made in the sole discretion of my Executors and Trustees, and for such amounts and on such terms as my Executors and Trustees may deem proper.

"Twelfth. I hereby nominate, constitute and appoint JOSEPH BROWARSKY and DORA FOSTER, Executors of this my Last Will and Testament, and Testamentary Trustees for all Trusts which I have created under this Will and Testament, and for which no specific Trustees have been named.

"Thirteenth. I direct that DAVID M. JANAVITZ, Esquire, be retained as Counsel to assist in the administration of my Estate.

"IN WITNESS WHEREOF, I, IKE BROWAR-SKY, the Testator, have hereunto set my hand and seal this *26th* day of June, 1947.

(Sgd) Ike Browarsky (SEAL)

"SIGNED, SEALED, PUBLISHED AND DE-CLARED by IKE BROWARSKY, the Testator above named, as and for his Last Will and Testament, in the presence of us, who at his request, and in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses.

(Sgd)  Pauline Slavkin
(Sgd)  D. M. Janavitz"

"CODICIL

"I, IKE BROWARSKY, being of sound and disposing mind, do hereby make, publish and declare the following to be a Codicil to my Last Will and Testament dated June 26, 1947:—

"1. In the Twelfth paragraph of my Will, I hereby change the same to read as follows:—

" 'Twelfth. I hereby nominate, constitute and appoint LOUIS A. SHEPPERD and DORA FOSTER, Executors of this my Last Will and Testament, and Testamentary Trustees for all Trusts which I have created under this Will and Testament, and for which no specific Trustees have been named.'

"IN WITNESS WHEREOF, I, IKE BROWAR-SKY, the Testator, have hereunto set my hand and seal this 16th day of February, 1950.

(Sgd) Ike Browarsky (SEAL)

"SIGNED, SEALED, PUBLISHED AND DE-CLARED by IKE BROWARSKY, the Testator above named, as and for a Codicil to his Last Will and Testament, in the presence of us, who at his request, and in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses.

(Sgd)  Pauline Slavkin
(Sgd)  D. M. Janavitz"

On September 20, 1954, Helen Collier Browarsky filed an election to take against that will, alleging that she was the wife of decedent.

The first proceeding before this court was a petition to mortgage certain real estate of decedent, which was set down for a hearing on September 17, 1955. This was continued to October 19, 1955, at which time the court permitted the executors of the estate, Dora Foster and Lewis A. Shepperd, to execute a mortgage on certain real estate of decedent, in the amount of $69,000.

The next proceeding that came before the court was a petition to vacate and set aside an election to take against the will of decedent. This petition was filed February 23, 1956, and was finally disposed of by an opinion and order of court, dated May 19, 1959, where the election to take against the will was stricken, and a decree entered which, more specifically, reads as follows:

"DECREE

"And now, this *19th* day of May, 1959, it is ordered, adjudged and decreed that the election of Helen Collier Browarsky to take against the will of Ike Browarsky, deceased, be and the same is hereby annulled; and

"It is further ordered that a certified copy of this decree be recorded in the office of Recorder of Deeds of Allegheny County, Pennsylvania, and that the Clerk of the Orphans' Court enter on the margin of the record of the will of the decedent a notation showing this proceeding and the annulment of the election as herein decreed.

( Sgd) Per Curiam".

The estate was called for audit on September 21, 1961. There is a notation that on October 3, 1961, Charles F. Dean, Esq., entered his appearance for Rachel Sandra Browarsky and Benita Mae Browarsky.

The record indicates that the next protracted hearing in the above estate began on December 12, 1961. Hearings on the exceptions were first scheduled for December 12 and 13, 1961, and further adjourned to October 29, 30 and 31, 1962. The hearing on December 12, 1961, was followed by an opinion handed down on May 9, 1963, and a decree dated May 16, 1963, to which numerous exceptions were filed.

During the process of this litigation, the estate also became involved in an action in assumpsit in the Common Pleas Court of Allegheny County. The damages allegedly constituted a breach of covenant contained in the lease entered into as far back as September 1, 1944, between plaintiffs and decedent and his deceased brother, Harry Browarsky. This case was tried in the common pleas court on September 21, 1961, before His Honor Judge Robert Van der Voort, and a verdict against the estate of Ike Browarsky and the estate of Harry Browarksy was entered in the amount of $28,000. This litigation, however, was consummated on the 13th day of September, 1963, when the court approved a compromise settlement of the executors, Dora Foster and Lewis A. Shepperd, executors of the estate of Ike Browarsky, in the amount of $7,500.

The estate has had legal problems involving both inheritance taxes of the Commonwealth of Pennsylvania and Federal estate taxes of the United States and refund litigation with both the State and Federal governments. The refund litigation with the State and Federal governments was not disposed of at the time of the proration decree of this court of the Federal estate tax, dated January 18, 1965.

On September 15, 1955, Dora Foster and Lewis A. Shepperd, executors of the estate of Ike Browarsky, filed an Internal Revenue Federal Estate Tax Return showing a tax liability of $101,358.20, and on May

2, 1958, after an audit of the Internal Revenue Department, the estate was assessed $17,681, making a total estate tax of $123,254.88 due the United States Government.

The executors filed said petition for proration of taxes on December 30, 1964, which was returnable January 18, 1965, and on that date, the order for proration of taxes was entered as follows:

"ORDER OF COURT

"AND NOW, *January 18*, 1965, the within Petition having been presented in open Court and citations having been issued pursuant thereto to Dora Foster, Sadie Shepperd, Lewis A. Shepperd, M.D., Seymour J. Chotiner, Esq., Attorney for the estate of Joseph Browar, deceased, Henrietta Browarsky Ruekberg, Helen Collier, and Mellon National Bank and Trust Company, to show cause why the prayer of said Petition should not be granted and the Federal Estate Tax and interest thereupon paid upon the taxable estate of Ike Browarsky, Deceased, should not be equitably prorated among the persons interested in said taxable estate, and why each of them should not be summarily directed to pay to the Executors under the Will of Ike Browarsky, Deceased, such sums as may be determined are justly due and owing by them to said Executors, returnable Monday, January 18, 1965, at 10:00 o'clock A.M., Eastern Standard Time.

"IT FURTHER APPEARING that said citations were duly served upon all of the foregoing parties either personally or by registered mail and no answer has been filed to said Petition by any of the foregoing parties and that the return day of the foregoing citations is now past,

"Upon motion of David M. Janavitz, Attorney for Petitioners, it is ordered, adjudged and decreed that the prayer of the Petition is hereby granted and equi-

table proration of Federal Estate Taxes is directed to be made by the above named parties in accordance with Exhibit "C" attached to the Petition as follows:

| | |
|---|---|
| Dora Foster | $ 4,856.33 |
| Lewis A. Shepperd | 26,993.96 |
| Rachel Golden | 20,745.95 |
| Benita Penner | 20,745.96 |
| Henrietta Ruekberg | 9,446.39 |
| Sadie Shepperd | 26,795.82 |
| Estate of Joseph Browar | 11,133.54 |
| Helen Collier | 2,536.93 |

"IT IS FURTHER ORDERED that said amounts as above prorated be charged against those having legacies payable to them or to those in possession of property and the said persons are hereby ordered and directed to pay to the Executors of the estate of Ike Browarsky, Deceased, the amounts of prorated taxes as above set forth, or in the alternative, that the amounts of prorated taxes due and owing as above set forth be deducted from any debt or legacy due and owing by the estate to any of the foregoing persons or from any amounts of principal or income which may be payable to any of the foregoing persons.

(Sgd) Per Curiam (R)"

A stipulation executed by all counsel was received February 24, 1967, and deemed factually relevant. The stipulation of October 29, 1962, and the subsequent decree of May 16, 1963, together with the stipulation agreement ordered filed July 15, 1964, and the subsequent decree of August 7, 1964, disposed of most of the difficult problems of the estate. However, Joseph Browar died July 18, 1963, and the executors of his estate filed, on September 11, 1964, disclaimers and releases of certain property in this estate, and on October 30, 1964, Lewis A. Shepperd filed certain disclaimers and releases of certain interests in this estate.

The stipulations and other record facts indicate that there were many factors of a complicated nature for the executors to consider prior to the filing of their petition for proration of the Federal estate tax on December 30, 1964. *The court holds that there was no lack of diligence on the part of the executors in filing the said petition as of that date.*

The varying amounts due and apportioned by the court, in its order of January 18, 1965, were paid to the executors on or before April 15, 1965.

The executors state, in their stipulation filed February 24, 1967, that the sum of $51,892.51, being the balance for distribution to the residuary beneficiaries, namely, Rachel Sandra Browarsky and Benita Mae Browarsky, residuary legatees, and Henrietta Ruekberg, residuary legatee, has been on deposit in the following banks earning the going or current rate of interest:

| Name of Bank | Amount of Deposit | Date of Deposit |
|---|---|---|
| Dollar Savings Bank ....... | $38,000.00 | 4-15-65 |
| Pittsburgh National Bank ... | 6,912.73 | 4-15-65 |
| Pittsburgh National Bank ... | 6,979.78 | 2-21-66 |
| Total ............ | $51,892.51 | |

With these facts in mind, the court must pass on the exceptions that are before the court.

The exceptions may be divided into four groups:

1. The exceptions to the manner of payment of Pennsylvania state inheritance taxes and the failure to charge interest to certain parties benefited by such payments.

2. The exceptions to the manner of the payment of Federal estate taxes and the failure to charge interest to certain parties benefited by such payments.

3. The exception to the failure to allow interest on the pro rata shares of Joseph Browar, Lewis A. Shep-

perd and Sadie Shepperd, of the expenses of the litigation pertaining to Helen Collier's election to take against the will of decedent.

4. The exceptions to the failure to allow interest on certain moneys paid by the executors on behalf of Dora Foster and on the surcharge of Dora Foster and Lewis Shepperd.

The court is of the opinion that the questions of interest on the Federal estate taxes and the payment of Pennsylvania state inheritance taxes were left open by the stipulation and supplemental petition for distribution, ordered, filed and approved by Judge Wolk on July 14, 1964, and that all other claims for interest and disputed matters were settled at that time. The agreement of settlement was confirmed by the decree of this court dated August 7, 1964, and no exceptions were filed to that decree.

The exceptants contend that the executors paid the Pennsylvaina transfer inheritance tax July 19, 1954, of Joseph Browar, Lewis Shepperd and Sadie Shepperd, in the amount of $9,974.63.

These taxes were paid from principal-personalty at a time when the inheritance tax law of Pennsylvania did not require the executor to pay all the inheritance taxes of the decedent. See Cochrane's Estate, 342 Pa. 108, at page 112:

"Appellant also contends that the appraisal and assessment as made is void, because it assesses a single tax and that against the executor and includes a tax on the fund in the joint bank accounts which does not go through its hands. This is based upon the assumption that the appraiser appraised one-half of the joint bank accounts as part of the estate of the decedent in the hands of the executor and that the assessment with respect to such accounts was made against it. The State appraiser is required to appraise in one assessment the various items constituting the taxable estate of the

decedent, real estate, assets donated in contemplation of death, those comprising a gift to take effect at or after death, funds in joint bank accounts, etc. The statute (Transfer Inheritance Tax Law of June 20, 1919, P. L. 521, 72 PS Sec. 2301 et seq.) contemplates only one appraisement of all the taxable assets of the decedent's estate. Who shall pay the tax depends upon who receives the property. The Commonwealth may be required to look to several sources in order to obtain the aggregate amount of the taxes. The only tax which is chargeable against the personal representative is that on the assets passing through its hands, which it is required to deduct from each distributive share. For the tax on the other assets of the estate, which do not pass through its hands, the Commonwealth must look to the individuals receiving the property.

"The order of the court below dismissing the appeals from the assessments is affirmed at the cost of appellant".

Where an executor pays a tax which should have been paid by a legatee, the tax, with interest thereon, should be deducted from the distributive share of such legatee: Constable's Estate, 299 Pa. 509, at pages 513-15:

"Herbert Constable was bequeathed $10,000 by the decedent. The inheritance tax thereon, $500, was paid by the executor, the legatee agreeing to pay the tax on final distribution. The court surcharged the executor with the amount of the tax paid and interest thereon, $285.25. In the schedule of distribution, no deduction was made from the legatee, who was also a residuary, of the amount of the tax paid. We are at a loss in attempting to follow the court's conclusion as to this item of surcharge. The tax should have come out of the legatee. Under the court's ruling, he receives the face amount of the bequest. When the executor paid the tax, he did so in relief of the legatee and the amount should

be deducted from the amount finally awarded to him from the residue, and also any interest thereon which the estate would have received on the $500 between the time of payment and distribution. While it is true, as appellee's counsel argues, that it is mandatory on an executor paying a legacy to deduct the tax (Act of May 6, 1887, P. L. 79, 80), this does not mean that if he does not do so, the legatee shall profit at his expense. This provision is in the law to fix the personal responsibility of the executor to the Commonwealth for the tax, if he does not deduct it in making payment to the legatee. What has been said as to this item of surcharge applies in part to the tax paid on another legacy of shares of stock appraised at $8,000. This stock was given to Herbert Constable for life, with remainder to three nephews of the deceased. Appellant paid the tax on the legacy as a whole. He was surcharged with this amount, $400, together with $220.20 interest thereon. The surcharge was wrong as to so much as represents the tax on the life interest alone. On final distribution, the residuary share of Herbert Constable can be charged with this portion of the tax and any interest which the estate lost by its payment. Appellant must, however, be held for the equivalent of the tax on the remainder. His payment of this was gratuitous. The act does not require remaindermen to pay the tax on their interest until they come into possession. Hence this amount cannot be charged against them, nor can the estate be made to pay for it. While the life interest and remainders were not appraised separately, as directed by the act, the court can equitably adjust the tax and interest between the estates in its final decree of distribution".

The first and final account of Lewis A. Shepperd, one of the coexecutors, filed July 27, 1961, shows that the executor collected $12,000 in rents on the real estate at 6015-17 Penn Avenue, Pittsburgh, Pa., and $2,400

from the property at 1624 Beaver Avenue, Pittsburgh, Pa., from May 1954 to December 31, 1954, and that he made no disbursements relating to these properties during that period except distribution to Sarah E. (Sadie) Shepperd, life tenant, in the amount of $6,400. Accordingly, as of December 31, 1954, the executor was in possession of $8,000 net rentals, ultimately payable to Sadie Shepperd, the life tenant, from the said real estate.

Similarly, in 1955, the executor collected $18,000 in rents from the Penn Avenue properties and $3,324.92 from the Beaver Avenue property, or a total of $21,-324.92. Out of these amounts he paid expenses of $1,-774.83 and distributed $8,800 to Sadie Shepperd, the life tenant, making a total of $10,574.83 paid out in 1955, and leaving $10,750.09 of the 1955 rentals in his hands. It thus clearly appears from the said account that by February of 1955 the executor had in his possession rents ultimately payable to Sadie Shepperd, in an amount in excess of the $9,862.13 paid by the executor on account of the Pennsylvania inheritance tax on her life tenancy in the real estate, and in excess of the $56.25 inheritance tax paid on the stock given to Joseph Browar, and the $56.25 inheritance tax paid on the stock given to Lewis A. Shepperd.

Not only did the executors retain the rentals above referred to, but during the course of the administration of the estate, they retained other rentals which the original and supplemental accounts show were transferred to principal-personalty, to pay debts, in the ultimate amount of $28,769.33, which has not yet been distributed to Sadie Shepperd, but is shown as due her, in the second supplemental account filed November 28, 1966. Since decedent's estate has had the use of rents in excess of Sadie Shepperd's obligations to the estate for inheritance taxes, without the payment of interest, since February of 1955, it would not be equitable to

charge her interest on the inheritance tax of $9,862.13, paid on her behalf by the executors on July 19, 1954. Any rent not paid to Sadie Shepperd would be payable to Joseph Browarsky and Louis Shapira (Shepperd) under the terms of the will. The residuary beneficiaries gained more through the use of the retained rents than they lost through the advances of the inheritance tax by the executors on behalf of Sadie Shepperd, Lewis A. Shepperd and Joseph Browar. The auditing judge declines to surcharge the executors for the funds used by them in payment of the Pennsylvania inheritance tax chargeable to the said three persons under the circumstances of this estate, nor should these three persons be charged with interest on the said tax payments under such circumstances.

Exceptant contends that the costs in litigating the Helen Collier election to take against the will should bear interest at six percent. He states, on page 11 of his brief:

"By stipulation it is agreed the date the money was used, the name of the person, the amount of money used and the date the money was repaid are as follows:

| Date Paid | From Whom | Amount Paid | Date Repaid |
|---|---|---|---|
| Jan. 2, 1961 | Joseph Browar | 359.64 | |
| | | | April 15, 1965 |
| Jan. 2, 1961 | Lewis A. Shepperd | 1,438.37 | |
| | | | April 15, 1965 |
| Jan. 2, 1961 | Sadie Shepperd | 1,667.45 | |
| | | | April 15, 1965 |
| | | 3,464.46" | |

The court finds no justifiable legal basis for charging six percent or any other interest charge on this money.

The Collier case was an extensive lawsuit. The parties, by stipulation filed July 15, 1964, by order of Judge

A. L. Wolk, agreed on a proration of the expenses of the Collier case. There was no agreed time as to when the prorated expenses were to be repaid to the executor, nor did the decree that followed the entry of the stipulation set a date for the repayment of the prorated Collier expenses. The court is of the opinion that any time these expenses were repaid before the time of distribution was a proper time for repayment. The question of whether or not these expenses should have been prorated in any event was a contested one and resolved by stipulation which was completely silent on time of repayment and made no implication that interest was due thereon. A surcharge of the executors for failure to collect interest on these items would be highly improper. The same ruling follows on the prorated Collier expenses that were charged against the $10,000 legacy of Dora Foster in the amount of $1,-412.43.

All matters pertaining to the surcharge of Dora Foster, in the amount of $650, were likewise settled by the stipulation which called for the repayment of the $650. The agreement was silent as to any interest and purported to settle this contested matter for $650. This amount, the exceptant states, was paid into the estate July 17, 1964, which was two days after the stipulation was ordered filed and prior to the decree of August 7, 1964, which ratified the stipulation.

The same ruling applies to the contention of exceptants as to interest on surcharges of the executors for payments, made as follows:

| | | |
|---|---|---|
| May 1, 1954 | Sadie Shepperd ... | $  300 |
| May 1, 1954 | Lewis Shepperd ... | 1,000 |
| | | $1,300 |

There is no interest due on these items, as they were settled by the stipulation of July 15, 1964.

Exceptants' contention that the residuary funds belonged to the residuary legatee from the date of death of the decedent has never been the law in Pennsylvania. See Bentz v. Nieman, 6 Watts 85.

Technically, the decree of August 7, 1964, wherein the account was confirmed, would automatically dispose of this question. Exceptants, however, contend that this question was reserved from this decree. Not conceding this, but for argument's sake, granting that it was reserved, the interest must be denied to the residuary legatees, for it is obvious from the multiple activities of the executors that there were many times when the entire principal-personalty could have been called on either to settle creditors' claims or further to carry out the administration of the estate.

As to the contention that the executors used funds of the residuary beneficiaries in the payment of the taxes, the Federal estate tax statute required the executors to pay the entire tax on both testamentary and non-testamentary assets: Remick, Pennsylvania O. C. Practice, Vol. 2, pages 354-55, states as follows:

"(b) Payment of Tax—Apportionment or Proration

"The tax is due and must be paid within fifteen months from the date of death, unless an extension of time for payment thereof has been granted by the commissioner. No discount is allowed for payment in advance of the due date. Interest on the amount of tax shown by the return is added if payment is not made on or before the due date. Interest in such cases is computed at the rate of 6% per annum.

"The act provides that the executor shall pay the entire tax, even though the gross estate may consist in part of property which will never come into the possession of the executor, but the tax thus paid is apportionable to the interests or shares whose devolution contributes to the total tax".

There can be no surcharge of the executors here for matters not reserved under the stipulation of July 15, 1964, in view of the decree of August 7, 1964. At that time, if exceptants desired that the executors be surcharged for certain actions, exceptions should have been filed to that effect. This was not done. We believe that what is applicable so far as a review of the account is concerned, is well stated by Justice Paxson in Scott's Appeal, 112 Pa. 427, at pages 436-37:

"It was conceded that the petitioners were not entitled to a review as a matter of right. Were they entitled to it as a matter of grace? The rule was thus stated in Milligan's Appeal, 82 Penn. St. Rep. at page 395. 'It is well settled that an account thus settled and confirmed can only be reviewed as a matter of *right* for error of law apparent on the face of the record, or for new matter which has arisen since the decree. As a matter of *grace* a review may be granted for new proof, discovered after the decree, which proof could not possibly have been used at the time when the decree was made;' citing Story's Eq. §404: Riddle's Estate, 7 Harris, 431; Russell's Admr's Appeal, 10 Casey, 258; Hartman's Appeal, 12 Id., 70.

"The petition in this case does not come within the rule thus stated. It does not point out any error of law appearing on the face of the decree, nor show that any new matter has arisen, or even that any new proofs have come to light since the decree. The principal ground of complaint is that the accountant was allowed a credit for the partial loss on a mortgage, which he had transferred from his account as executor to that of his account as a trustee. His claim for this allowance was made at the adjudication in 1883, and was then passed upon by the court. Whether the credit should have been allowed had all the facts been before the court then which were before it upon the review, we are not called upon to say. It is enough that it was passed

upon then in a regular and orderly way, and the petitioners having failed to make their objections then, are precluded from doing so now. All the facts which they have since brought forward were known, or might have been known to them then. There is no allegation of after discovered evidence which they could not have produced at the original adjudication. There is only the allegation that they did not attend to their business because it was inconvenient to do so. This is not sufficient. They cannot have a solemn adjudication opened, and the public time consumed for such a reason. Something is due to the finality of judicial proceedings". (Italics by the court.)

The court affirmed the foregoing principle in Pincus Estate, 378 Pa. 102, at page 109:

". . . At the time of audit, all the petitioners were in possession of the same facts which they now allege. Each knew of the respective stock holdings of the decedent, the brothers and the various family trusts. Likewise, each knew of the identity of each of the fiduciaries involved and the extent to which their individual interests and fiduciary obligations overlapped. The present petition seeks in effect to accomplish the filing, nunc pro tunc, of exceptions which could have been filed at the time of audit. It was never intended that the statutory proceeding for review of an adjudication should be employed merely as a device to accomplish the belated filing of exceptions. Wartman's Estate, 11 W. N. C. 403 (1882).'The aim of the law is to give finality to the adjudication of the accounts of fiduciaries.' Remick, Pa. Orphans' Court Practice, Vol. 1, §160, p. 464; and see Gottschalk's Estate, 344 Pa. 135 (1942)."

Exceptants contend that funds in the principal-personalty of the estate were used to pay Federal and State taxes without permission of the residuary lega-

tees, and that the executors should be surcharged for so doing.

A requirement that the executor must secure permission to use any portion of any fund to administer an estate or else be held liable for the consequence of the use of such funds would so fetter the authority of an executor that estate administration would be impossible.

This contention has no force in this case, where the testator gave the executors authority to use the property of the estate in the payment of taxes in "such amounts and on such terms as my Executors and Trustees may deem proper".

The eleventh paragraph of the will of decedent recognized the duty of the executors to pay tax, and it is obvious that decedent wanted any property he had to be used for payment of taxes without reference to the category of personalty or realty.

The eleventh paragraph indicates that the executors had full authority to use realty or personalty in payment of taxes and certainly no surcharge of an executor can stem from the full authority given by decedent. Had the executors mortgaged any property or secured any loan on realty from any banking institution, under paragraph eleventh of the will, the interest charges were authorized by decedent and would have been paid from principal-personalty.

Until the proration was made, the executors had no means of determining the various amounts that the various beneficiaries owed as reimbursement to the executors on account of their Federal tax payments.

Exceptants contend that the various beneficiaries should have been required to pay interest on their share of the amount used in payment of Federal estate taxes. In other words, when the order of January 18, 1965, was made requiring the following persons to pay the amounts as follows:

| | |
|---|---|
| Dora Foster | $ 4,856.33 |
| Lewis A. Shepperd | 26,993.96 |
| Rachel Golden | 20,745.95 |
| Benita Penner | 20,745.96 |
| Henrietta Ruekberg | 9,446.39 |
| Sadie Shepperd | 26,795.82 |
| Estate of Joseph Browar | 11,133.54 |
| Helen Collier | 2,536.93 |

each should have been required to pay the respective amounts plus interest from the date the Federal estate tax was paid.

The apportionment statute does not authorize such an apportionment order and the court could not have drawn such a decree.

There are a number of other reasons why the executors could not demand interest on the funds which they used to pay Federal estate taxes. The various amounts payable by the respective parties were not determined, and interest could not be requested until the amount payable by each party was fixed or liquidated by this court or a decree of this court. Interest never runs on an unliquidated account.

The Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, provides for the proration of the estate tax, which means *"gross Federal estate tax, including interest and penalty thereon"*.

*This act is a complete system* which the Pennsylvania Legislature enacted for the equitable proration of the Federal estate tax burden. The New York statute and case cited by exceptants' counsel are neither applicable nor persuasive under the facts in this estate.

The Pennsylvania act makes no provision for interest on the prorated amounts and we have found no Pennsylvania decision holding that the apportioned amounts bear interest from the date of payment of the tax, as urged by exceptants. Accordingly, no such

interest will be charged on the apportioned amounts of the Federal estate tax.

We come now to a discussion of the exceptions relating to Dora Foster. Ike Browarsky died April 19, 1954, as previously stated. In the second paragraph of his will he bequeathed $10,000 to Dora Foster. Section 753 of the Fiduciaries Act of 1949 provides that a beneficiary of a pecuniary legacy is entitled to three percent interest per annum from one year after the date of the death of the testator until the payment of the legacy. Counsel for Dora Foster has claimed, on her behalf, the $10,000 legacy, less $1,500, the Pennsylvania inheritance tax on this legacy, or $8,500, with interest at three percent from April 19, 1955, until the payment of the legacy. Exceptants argue that her Federal estate tax liability on this legacy should also be deducted as of the time the Federal estate tax was paid, namely, September 2, 1955, when $52,000 was paid, or September 5, 1955, when $55,000 was paid, or May 27, 1958, when $20,000 was paid. It is erroneous to say that these Federal tax payments should be deducted from the legacy before interest is computed, because it was not until January 18, 1965, when the proration order of this court was made, that the amount of the liability of Dora Foster for the payment of Federal estate tax was determined. It was at that time only that the demand was made upon her to pay her pro rata share of the Federal estate tax liability. Under section 2002 of the Internal Revenue Code the executors had the duty to pay the Federal estate tax. There was no obligation on the part of the legatee to pay anything on account of such tax until her liability was determined in accordance with the Estate Tax Apportionment Act of 1951, P. L. 1405.

Since counsel for Dora Foster has made claim only for the net legacy after deduction of the Pennsylvania inheritance tax, with interest at three percent from

one year after the date of death of the testator, and this claim is properly based on section 753(a) of the Fiduciaries Act of 1949, the legacy will be allowed in accordance with such claim. See Smith Estate, 30 D. & C. 2d 1.

The supplemental account and supplemental petition for distribution ordered filed July 15, 1964, by his honor Judge A. L. Wolk provides, in the second paragraph, as follows:

"All of the parties in interest have agreed to an amicable disposition of the exceptions and the settlement of all matters, except the proration of Federal Estate Tax and Pennsylvania Inheritance Tax. Said disposition is set forth in a Stipulation-Agreement executed by all parties in interest, a copy of which is hereto attached and made a part hereof".

The stipulation-agreement pertaining to the amount due Dora Foster, provides as follows, in paragraphs 3, 4 and 6:

"3. Exception to the allowance of a surcharge against Lewis A. Shepperd and Dora Foster, Executors, in the sum of $132.00 is sustained".

"4. Exception to the allowance of the claim of Dora Foster on a check in the sum of $7,500.00 is sustained, and Dora Foster is allowed the sum of $5,625.00 for payment in full of her claim on said check in the sum of $7,500.00".

"6. Lewis A. Shepperd and Dora Foster, Executors of the Estate of Ike Browarsky, deceased, are to be paid the sum of $7,000.00, that is $3,500.00 each, as Executor Fees for payment in full for all services rendered to the principal residuary of said Estate".

These amounts due Dora Foster were approved and confirmed by the decree of August 7, 1964, which refers to a decree of May 16, 1963, in which exceptions were filed. The decree specifically states that it appears that a stipulation and agreement, disposing of all the

exceptions to the decree of May 16, 1963, has been agreed upon by all parties and filed, and the court approved the stipulation and agreement, and by doing so, it authorized the payments above set forth to Dora Foster. There was no agreement to pay interest on any claim or charge. Accordingly, none will be allowed.

In summary, no interest will be charged to the executors or to the legatees or devisees, on account of any Federal estate tax payments made by the executors, or on account of payments made by the executors on Pennsylvania inheritance tax obligations growing out of the death of Ike Browarsky. No interest will be charged against any of the parties on any surcharge or on any proportionate part of the expenses of the Collier case. All of the exceptions of the residuary legatees will be dismissed. Dora Foster will be allowed interest on the net amount of her legacy, viz. $8,500, at the rate of three percent, from April 19, 1955, until paid.

A decree will be drawn in accordance with this opinion.